Gabrielli, J.
This case poses the novel question whether minutes of a meeting of a corporate board of directors signed by an officer, the secretary of the corporation, which recite that the board has agreed to modify a corporate contract and which also set forth in detail the terms of the modification, may be deemed to satisfy the requirements of section 15-301 of the General Obligations Law.
The parties entered into a subscription agreement for the purchase of stock, as well as an employment agreement, on February 13, 1969. At the same time, irrevocable proxy and shareholders’ agreements were executed, but these are not relevant to this appeal. The subscription agreement obligated the defendant Greenberg to purchase 124,000 shares of plaintiffs stock at $3 per share for an aggregate purchase price of $372,000. The purchase price was to be paid in several annual installments, with an initial payment of $99,000 covering 33.000 shares to be made upon the execution of the agreement. Two installments of $99,000 each covering a total of 66.000 shares were to be paid on February 13, 1970 and February 13, 1971 respectively; and a final installment of $75,000 representing 25,000 shares was to be paid on February 13, 1972. The employment agreement provided that the defendant would be employed by plaintiff for five years as its executive vice-president at an annual salary of $40,000 and gave defendant an option to continue his employment for an additional five-year period.
The subscription agreement contained a clause stating that "[t]his agreement may not be changed or terminated orally”; similarly, the employment agreement provided that ”[t]his agreement may not be changed, rescinded or altered or amended except by an agreement had in writing and signed by both of us.” The initial installment on the subscription agreement was paid and the defendant assumed the position of executive vice-president and continued to perform his duties until May 25, 1971 when he suffered a heart attack.
In 1970, the defendant, asserting a financial inability to *604 meet the second installment obligation, obtained from plaintiff a change in the payment terms of the subscription agreement and tendered $50,000 of the $99,000 due which was accepted by the plaintiff. In 1971, when the third installment was due, the defendant once again alleged an inability to meet his obligation. It is this and the remaining installments which are the subject of this appeal. Defendant Greenberg contends that at its April 30, 1971 meeting, plaintiff’s board of directors agreed to accept his proposal that he would borrow $50,000 to purchase an additional 16,667 shares in satisfaction of his entire remaining obligations under the stock subscription agreement on the condition that he would either accept a reduction in salary or assume the duties of the corporation’s controller. Defendant thus claims that the original subscription agreement was modified, and sought at trial to introduce into evidence the minutes of the meeting of the board of directors which contain the terms of the modfication agreement and an acknowledgment of the board’s approval thereof. Specifically, the minutes state in pertinent part:
"A discussion then ensued concerning the subscription obligation of Mr. Greenberg, pursuant to which he had purchased 49,667 shares of the company’s common stock and an additional obligation to purchase 74,333 shares at $3 per share. Mr. Greenberg stated that he was unable to fulfill the balance of the subscription obligation which was due on February 13, 1970 (and was extended to February 13, 1971), pursuant to which he was obligated to pay an additional $49,000, was unable to meet the obligation due on February 13, 1971, and anticipated that he would be unable to meet the future obligations. He further stated that he could not effectively function as the company’s Executive Vice-President with the obligation overhanging.
"Mr. Greenberg proposed to borrow $50,000 in order to liquidate the obligation, said $50,000 to be used to purchase an additional 16,667 shares of the company’s common stock. Mr. Raskin thereupon left the meeting for a prior appointment and after additional discussion, the meeting was recessed so that the board members could discuss the proposal outside Mr. Greenberg’s presence. Mr. Greenberg thereupon reentered the meeting and the meeting resumed.
"The board, Mr. Greenberg abstaining, thereupon agreed to accept Mr. Greenberg’s proposal on condition that Mr. Green-berg either accept a reduction in his compensation to $25,000 *605 per annum until such time as the company’s operations are profitable or take over the duties presently performed by the Company’s Controller. Mr. Greenberg advised the Board that he would accept one or another of the conditions and would decide which to accept by May 1st.”
There then followed a recital of the board’s reasons for deciding to approve the defendant’s proposal which "The chairman directed that the secretary record in the minutes”. It appears that the corporation had an immediate cash flow problem which would be alleviated by the influx of $50,000 to be provided by Greenberg and by a reduction in his salary or the alternative assumption of the controller’s duties. According to the minutes, the directors were also of the opinion that Greenberg was a valuable asset to the company and they believe that it was essential that he continue to serve as executive vice-president. The minutes were signed, as required, by the corporation’s secretary, Mr. Labaton, an attorney.
Greenberg subsequently tendered the $50,000 as agreed to at the board of directors’ meeting but the tender was rejected by DFI’s president. The corporation then commenced this action against the defendant for breach of the stock subscription agreement and the defendant, in addition to his counterclaims based on breach of the employment agreement by DFI, sought to interpose the claimed modification as a defense. The Trial Judge held that the minutes did not satisfy the requirements of section 15-301 of the General Obligations Law, applicable to the modification of contracts containing a provision that they may not be orally altered. The Judge thus ruled that the minutes were inadmissible as a matter of law and directed a verdict in plaintiffs favor on its cause of action. Greenberg’s counterclaims were submitted to the jury which returned a verdict in his favor in the amount of $32,000, and judgment was then entered against the defendant in the amount of $232,574.48 to be offset by the $32,000 awarded to the defendant on his counterclaim. The judgment was affirmed by the Appellate Division.
Section 15-301 of the General Obligations Law provides that, "1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by *606 the party against whom enforcement of the change is sought or by his agent.”
The Appellate Division relying on Bakhshandeh v American Cyanamid Co. (8 AD2d 35, affd 8 NY2d 981), held that the minutes were inadmissible because they "constitute at most a written memorandum” and not the agreement required by the statute. We disagree.. It is true that section 15-301 differs from the general Statute of Frauds contained in section 5-701 of the General Obligations Law in that a "note” or "memorandum” of an agreement is insufficient to satisfy the requirements of the former statute. Here, however, the modification agreement is formally acknowledged in the recorded minutes of the plaintiff corporation’s board of directors’ meeting and its terms are clearly and precisely set forth; and, of significant importance, the minutes are signed by the corporation’s secretary whose duty it is to keep and sign the minutes. This case is thus distinguishable from Bakhshandeh v American Cyan-amid Co. (supra, p 37) where the court found that the writing "at best was an unsigned memorandum of the terms of a discussion indicating an intention to change the original agreement”, and thus concluded that "the statute is not satisfied by a written memorandum of an oral agreement”. The case before us is not one presenting an abbreviated or incomplete expression of the parties’ agreement embodied in a "note” or "memorandum” sufficient for compliance with the general Statute of Frauds but inadequate for purposes of the "writing” requirement of section 15-301 of the General Obligations Law. The complete amendatory agreement between the parties is contained in the signed minutes as well as the board’s reasons for its adoption. To hold that the claimed modification was not "in writing” in this case would be a hypertechnical, overly formalistic and erroneous interpretation of the statutory requirement.
The purpose of subdivision 1 of section 15-301 of the General Obligations Law, which was intended in part to compensate for the demise of the seal (Semerad, Practice Commentary, McKinney’s Cons Law of NY, Book 23A, General Obligations Law, § 15-301, p 588), was to assure the authenticity of an amendatory agreement; thus, the statute requires the dignity of a formal writing to insure the validity and genuineness of a contractual modification. The duly recorded minutes of a meeting of the board of directors, signed by the corporate secretary, measure up to the level of dignity and authenticity *607 required by the statute. Subdivision (a) of section 624 of the Business Corporation Law requires a corporation to keep minutes of the proceedings of its board of directors. Generally, such minutes are prima facie evidence of action taken by the corporation (Rudd v Robinson, 126 NY 113, 117; 9 Fletcher Cyclopedia Corporations [Perm ed], § 4633, pp 615-616; 18 Am Jur 2d, Corporations, § 177, p 706; 18 CJS, Corporations, § 191, subd e, pp 612-613). While not directly applicable here, it is interesting to note that subdivision (g) of section 624 of the Business Corporation Law provides that records such as minutes of a board of directors’ meeting "shall be prima facie evidence of the facts therein stated in favor of the plaintiff in any action or special proceeding against such corporation”. The defendant Greenberg was present at the meeting to propose the modification which was then, according to the minutes, duly accepted by the board of directors and signed by its corporate officers, as required. Moreover, the preparation and drafting of those minutes were in control of the plaintiff DFI, the party to be charged. Thus, section 15-301 should not be read to require an amendatory writing prepared and executed in precisely the same manner as the original agreement. In requiring that a writing must be "signed by the party against whom enforcement of the change is sought or by his agent” the statute by its terms does not contemplate, in the circumstances here presented, an additional formal agreement signed by both parties.
As noted, the statute requires that the writing be signed by the party to be charged or his agent. This requirement may be satisfied where an officer, here the secretary of the corporation, whose duty it is to record them, has duly subscribed the minutes. Cases construing the same requirement in the general Statute of Frauds have held that the signing of the minutes of a board of directors’ meeting by the corporate secretary was a sufficient signing to satisfy the statute (People’s Trust Co. v Consumers’ Ice & Coal Co., 283 Pa 76, 82; see, also, Argus Co. v Mayor, etc., of City of Albany, 55 NY 495, 504, involving the signing of a municipal corporation’s common council minutes by its clerk). Plaintiff contends that the secretary’s signing of the minutes is ineffective because of a claimed conflict of interest on his part.* The issue whether the *608 minutes were properly signed by Labaton as DFI’s agent may be litigated at trial. At that time, DFI may also raise any other objections it may have with respect to the validity of the minutes, such as the legality of the board’s action in voting to accept the defendant’s proposal. On this appeal, we merely hold that as a matter of law it may not be concluded that the minutes do not satisfy the requirement of subdivision 1 of section 15-301 of the General Obligations Law; and, of course, if it be found that the minutes were duly signed, we would conclude that they should have been considered sufficient under that section.
The defendant also contends that the trial court erred in its charge to the jury with respect to his counterclaim based on a claimed breach of the employment agreement by DFI. We find this contention to be without merit. The jury returned a verdict of $32,000 on his counterclaim which defendant concedes is almost precisely the amount DFI owed under a provision in the employment agreement requiring stipulated salary payments in the event of disability; and it apparently rejected his claim that DFI wrongfully refused to permit him to resume his employment following his disability. Hence, a new trial is not necessary with respect to defendant’s counterclaims, and the Appellate Division determination with respect thereto is affirmed.
Accordingly, the order of the Appellate Division should be modified, with costs to defendant, to the extent of reversing so much of the order of the Appellate Division as affirmed the award of damages to plaintiff and granting a new trial on plaintiffs complaint, and, as so modified, the order should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order modified, with costs to defendant, and a new trial granted on plaintiffs complaint in accordance with the opinion herein and, as so modified, affirmed.

 It is asserted that the secretary, Mr. Labaton, was not acting as the corporation’s agent because a partner in his law firm was representing the defendant Greenberg at the time of the board of directors’ meeting. The record indicates that Mr. Labaton *608 informed the Trial Judge that this possible conflict of interest was revealed to both parties prior to the board of directors’ meeting at which the modification of the subscription agreement was approved, and no objection was raised.